ROBERT L. WILSON *et al.*, Appellants, *v.* JOHN GALT *et al.*, Appellees.

### APPEAL FROM WHITESIDE.

Where A. gave property to B., in trust, to be deeded to C., provided that "on or before the first day of October, 1855, C. should build and complete a good and sufficient dam, composed of rocks and rock, hewn timber and gravel, across Rock river, at the town of Sterling, and a canal or head race connected therewith, on the west side of said river, in the manner and for the purposes hereinbefore and in said act specified and enumerated:" It was *held*, that this was a condition precedent, the performance of which was necessary to raise the power in the trustee to make the conveyance.

A substantial performance of the condition, according to the meaning and intention of the parties, is sufficient.

BILL for injunction filed November, 1855, in Whiteside Circuit Court, alleging that complainants, or the ancestors of such as are minors, being desirous to secure the prompt completion, on or before the first day of October, 1855, by the Sterling Hydraulic Company, of a good and sufficient dam across Rock river, at the town of Sterling, and a canal or head race connected therewith on the west side of the said river, severally, on or about December 25, 1852, executed and delivered to said John Galt, a deed, reciting,

THAT WHEREAS, The legislature of the State of Illinois passed an act, in force April 13th, 1849, entitled "An act for the improvement of the navigation of Rock River, and for the production of hydraulic power," by virtue of which act a number of persons have associated as a company to build a dam across said river at Sterling, in said county, in manner and for the purposes in said act specified: AND WHEREAS, the persons so associated did, on the 7th day of July, 1852, file a certificate in the office of the clerk of the county court, in and for said county, in manner and form as required by said act, therein and thereby adopting the name of the Sterling Hydraulic Company, as the name by which the said company shall be designated: AND WHEREAS, the said party of the first part is desirous to secure the completion of said dam on or before the first day of October, A. D. 1855, and the construction of a canal or head race by said company, on the west side of said river, connected with said dam for hydraulic purposes. Now, THEREFORE, These presents witnesseth, that the said party of the first part, in consideration of the premises, and in order to secure the prompt and punctual completion of said dam and canal, or head race, in manner and for the purposes aforesaid, and in said act enumerated, and in consideration of the sum of one dollar, to the said party of the first part paid, the receipt whereof is hereby acknowled, do hereby grant, bargain, and sell, unto the said party of the second part, and to his heirs or executors, administrator or administrators (in trust for the uses and purposes hereinafter specified), all the following parcels of land or town lots, situated, lying and being in the town of Sterling, county of Whiteside, and State of Illinois, and known and described as follows (here follows description of lots): together with all and singular, the rights and privileges thereunto belonging, to have and to hold the above

described premises, unto the said party of the second part, and his executor or executors, administrator or administrators, in trust, nevertheless, for the following uses and purposes, to wit: In trust, in case the said Sterling Hydraulic Company shall, on or before the first day of October, 1855, build and complete a good and sufficient dam, composed of rocks and rock, hewn timber and gravel, across said river at said town of Sterling, and a canal or head race connected therewith, on the west side of said river, in manner and for the purposes hereinbefore and in said act specified and enumerated, then, and on application in writing by said company to the said John Galt, trustee as aforesaid, his executor or executors, or administrator or administrators, for a deed in fee simple to said premises, and then, upon said company having first given thirty days' public notice, to all whom it may concern, by publication in a public newspaper, published in or most adjacent to said county, that they will, on the day therein mentioned, make application to said trustee for a deed to said company, in fee simple, to and for said purposes, then it shall and may be lawful for the said John Galt, trustee as aforesaid, his executor or executors, administrator or administrators, to make, execute and deliver a good and sufficient deed of conveyance in law, in fee simple, for said premises, to said Sterling Hydraulic Company, said company paying all necessary and proper costs and expenses of said conveyance and said trusts, and all taxes assessed subsequent to the date hereof. But in case said Sterling Hydraulic Company fail or neglect to build and complete said dam, or canal, or head race, on or before the said first day of October, A. D. 1855, in manner and for the purposes hereinbefore, and also in said act specified and enumerated, then this conveyance shall be null and void, and the said premises shall vest absolute in said party of the first part, freely discharged from all liens whatsoever created by said trust.

(Signed and sealed by)                R. L. WILSON,    [SEAL.]
                                     ELIZA J. WILSON. [SEAL.]

The bill alleges that the one dollar in said deeds mentioned was never paid, and formed no part of the real consideration.

The bill further alleges, that said company did not construct said dam and head race in the time, at the place, and in the manner and form required by terms of said deeds, and that said deeds, therefore, became void; but that said company combining, etc., with said Galt, to injure complainants, etc., have published the notice in said deeds mentioned, etc.; that said Galt threatens to convey said real estate in said deeds described to said company, on November 20, 1855.

Prayer that said deeds be delivered up by said Galt, to be canceled, and that said Galt be perpetually enjoined from conveying to said company, and from incumbering or interfering with title to said real estate, and for other relief, etc., and for a temporary injunction in the meanwhile.

Bill sworn to November 5, 1855.

Separate answer of said company filed; admits that they were a body corporate, as alleged in bill; that said deeds were executed and delivered to said Galt.

The answer alleges, that on July 7th, 1852, some of the

complainants, and others whose names are subscribed thereto, executed the following agreement (which was duly delivered to said company on October 23, 1852, the date of their organization as a body corporate), viz.:

WHEREAS, a number of persons are about to associate as a company to build a dam across Rock River, at the town of Sterling, in pursuance of an act of the legislature of the State of Illinois, entitled "An act for the improvement of the navigation of Rock River, and for the production of hydraulic power," approved February 6th, A. D. 1849. AND WHEREAS, the property holders of said town, believing that such dam, when built, will greatly enhance the value of their town property; wherefore, in consideration thereof, we, the subscribers hereto, owners of property in said town, do hereby promise and agree to and with said company, that as soon as the said company shall subscribe for and take fifteen thousand dollars of stock for said improvements and dam, and file their certificate therefor in the office of the county clerk, in manner and form as directed by said act, that we will severally deed and convey to said company, by good and sufficient deeds of conveyance, the one equal half part of all the unimproved town lots which we at this time own, hold and possess in said town, excepting lots in blocks Nos. 8, 9, 24, 25, 40, 41, 42 and 43, west of Broadway, said deeds of conveyance to be drawn and executed with and upon the following conditions, expressed therein, to wit: That the said company will, on or before the 1st day of October, 1855, build, or cause to be built, in a good and workmanlike manner, a good and sufficient stone dam across said river, at said town of Sterling, in manner and for the purposes in said act specified, otherwise said deeds of conveyance to be forever null and void. And it is further hereby agreed, that we, the undersigned, owners of improved lots in said town, will, at the same time and upon the same conditions above mentioned, well and sufficiently secure to be paid to the said company, upon the completion of said dam, the one equal half part or sum of the present valuation or value of all the improved lots which we own or hold in said town of Sterling, exclusive of the improvements upon said lots, said valuation or sum to be ascertained and taken from the county assessor's book of the year 1852, by taking the assessed value of the next or most adjacent unimproved lot thereto.

IN TESTIMONY WHEREOF, We have hereunto set our hands, this 7th day of July, A. D. 1852.

The answer further alleges, that said stock was duly subscribed for, and said certificate duly filed, and said company fully complied with said agreement on their part; that said trust deeds were made in fulfillment of said agreement; that said company fully performed all that was required of them, by said trust deeds, to entitle them to the real estate therein described.

The answer admits that said notice was published as alleged; that Galt made no conveyances on account of objections from complainants, and denies the combining to injure, etc.

The separate answer of John Galt filed admits the execution and delivery of said deeds to him; denies that he

28

has threatened to convey to said company, and denies the combination to injure, etc.

General replication filed by complainants to each of said answers.

Bill dismissed on pleadings and evidence, for want of equity.

C. BECKWITH and LELAND and LELAND, for Appellant.

J. M. WIGHT, for Appellee.

SCATES, C. J. The condition annexed to the deed of trust from complainants to John Galt, the trustee, seems to have a two-fold object ; first, as a condition precedent, its performance was necessary, to raise the power and duty in Galt, the trustee, to convey the premises to defendants ; and, second, as a condition subsequent, to defeat or destroy the estate in fee conveyed to Galt in trust, and to revest it thereupon in the grantors.

Now this condition was, that the defendants should, " on or before the first day of October, 1855, build and complete a good and sufficient dam, composed of rocks and rock, hewn timber and gravel, across said river (Rock river), at said town of Sterling, and a canal or head race connected therewith, on the west side of said river, in the manner, and for the purposes hereinbefore and in said act specified and enumerated." The purposes expressed in the act of incorporation are, to obtain, with as little delay as practicable, a " slack-water navigation on Rock river, within this state, and for the production of hydraulic power by the same" (see Charter Acts, 1849, p. 136, Sec. 1) ; and that recited in the deed is the desire of complainants to " secure the completion of said dam on or before the first day of October, 1855, and the construction of a canal or head race by said company, on the west side of said river, connected with said dam, for hydraulic purposes."

There is no doubt, uncertainty, or ambiguity in this deed. The intention and the meaning are alike clearly expressed. The fee passed to Galt as a trustee. It was subject to a condition subsequent, by the non-performance of which the estate in Galt is destroyed, and revests in the grantors. This is to be taken strictly, as is said, 1 Greenlf. Cruise on Real Property, Title 13, Cap. 2, Sec. 1; 1 Inst. 219 *b*. We should construe the covenant strictly, and not enlarge it to work a forfeiture and destruction of an existing estate. The condition only required the completion of a dam and head race, on or before 1st of October, 1855, for hydraulic purposes. Now whether the completion of a dam, and a canal or head race, is sufficient to produce hydraulic power, or is merely a certain

degree of progress toward it, is a question of fact. If the dam, and canal or head race, were completed on the day, the condition is performed, whether thereby a power useful for manufacturing arises, or is produced, or not. Proof was taken, and witnesses differ, whether there was a power existing, and as to the quantum of that power, according to the state of the work on the 1st of October, 1855. We deem it of little importance, under this condition, whether a dam and head race produce an efficient hydraulic power or not, provided the dam and head race were completed by the time and in the manner specified. But we think the evidence shows that considerable power existed, as the works stood on the 1st of October, varying from five or six to thirty, forty or fifty run of stone. In another point of view, it becomes very important what power existed, in order to determine whether the head race was *completed*. And in determining this, it is necessary to know what a head race is. The witnesses differ, somewhat, in defining what a head race is. Some describe it as that part of the water channel or way, which leads from the pond or reservoir to the machinery to be driven; others confine it to that portion from the pool to the bulkhead and gates, by which the water is regulated, controlled or excluded from the race below, and machinery along it. The former definition is more nearly in the language of Mr. Webster, and is, doubtless, technically correct.

When we come, however, to ascertain the particular meaning of parties to contracts, we must look to surrounding circumstances. Was there such a completion of a head race as to afford an efficient and useful hydraulic power on that day —a race completed from the pond, to where machinery could be used? The witnesses state the fact to be, that there were twenty-two feet of race above the bulkhead and gates, and twenty-four feet below it, and that there was room to use it by erecting a mill over the race, or by a chute from it and through a mill on the river side.

Technically the race is a head race down to the machinery. In this sense the head race is never *completed* while it may be extended, and additional machinery supplied with power by the quantity contained in the pool and conveyed by the race. In this sense, its completion must depend on the exhaustion of the fountain, or the capacity of the race to conduct it. Its extension and completion, in this sense, must depend upon the demand of the power, as the wants of the community increase with its growth.

But the equity of complainants does not demand this interpretation. Such could not have been their meaning or intention, surrounding circumstances forbid it. We should rather understand their meaning to be, such a substantial completion

of dam and head race, as to produce an hydraulic power, to make a beginning in manufacturing, upon which, as a base, an increase, an extension of power could be created by extending the head race to make room, as power was demanded from time to time. Had more than this been intended, the complainants should not have contented themselves with a condition· for the completion simply of a head race or canal, but should have stipulated for a given number of feet of race, or a given quantum of power. Not having done this, we must hold the condition fulfilled, whether it be subsequent to defeat the estate granted to the trustee, or precedent, to raise his power to convey to defendants, by the substantial completion, *bona fide,* of such dam and canal or head race, as to produce an efficient, useful power for manufacturing purposes on that day. This is sworn to be the fact by the defendants' witnesses, most of whom appear to be experts as engineers, mill wrights, and millers, men practically acquainted with the form, manner and power of the works of which they speak. We must believe them, and that they know that whereof they affirm. That there was a slight mistake in the degree of bracing, and the strength of a gate post in the head race, or the unexpected settling of the center dam, can have little weight. For the whole testimony shows that the work was commenced and carried on *bona fide* and substantially, and the decided weight of testimony is, that it was completed by the day.

We deem the dam to be good and sufficient, notwithstanding it settled, and the same remark will apply to the head race, notwithstanding a post gave way for want of bracing, and a flood carried away a gate of the bulkhead. Were this a covenant in the contract of the builders, we should not feel warranted in declaring such deficiency a breach to work a forfeiture.

The apparent interest of complainants in the work, is substantially secured by establishing a manufacturing power for the present, from which their property may be enhanced in value, and their.wants supplied by the machinery that may be carried by the power.

Construing the condition as a covenant, on the part of defendants, we think the evidence shows it substantially and fully complied with or performed. It is difficult to resist the conviction, that the location of the dam, and not its completion, is the real and true ground of complaint and controversy. If so, complainants are remediless. For they have not, as they might, have protected themselves by a covenant, as to its location. Having left its location, and relocation, to the discretion of the company, they have no legal or equitable redress or remedy against its exercise. We can hear and relieve no complaint not thus founded.

We fully recognize the principle, that parties may make time the essence of their contract (*Kemp* v. *Humphreys*, 13 Ill. R. 576) ; and that estates in fee, for life or years, may depend, for their creation or destruction, or the power to create or destroy them, may depend upon the performance of conditions precedent or subsequent. Hill on Trustees 478, 479 ; 5 Serg. and Rawl. R. 380 ; 15 Vermt. R. 762 ; 2 Edwards Ch. R. 84, 142; 12 Barb. S. C. R. 440; 1 John. Cas. 125; 3 Littell R. 230; 9 Martin R. 117 (221); 2 N. Hamp. R. 120; 1 Conn. R. 79; 5 Mass. R. 320; 8 Pick. R. 288; 21 Pick. R. 417. Yet we do not think the proof authorizes the application of the principal here, to sustain the complainants' bill. There is no breach to prevent the creation of the power in Galt, the trustee, to convey, nor to destroy the estate in fee, in trust in him.

The court below did not err, therefore, in dismissing the bill for want of equity.

*Decree affirmed.*